# 2001 DTA 161

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE BAYAMON, PANEL II

HERMINIO RIVERA GONZALEZ, ESTHER AZUCENA LOPEZ FONTANEZ
Apelantes

*EX PARTE*

Núm. KLAN-2001-00238

San Juan, Puerto Rico, a 30 de abril de 2001

Panel integrado por su Presidente, el Juez Arbona Lago,
y los Jueces Urgell Cuebas y Aponte Hernández

Arbona Lago, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece la parte apelante de epígrafe para solicitar la revocación de sentencia parcial final, dictada a tenor con la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.5, mediante la cual el ilustrado foro de Primera Instancia desestimó su petición de adopción. Luego de un cuidadoso análisis confirmamos la sentencia apelada al concluir que la parte apelante no cumplió con los correspondientes requisitos previos para la adopción, por lo que carece de legitimación para iniciar el proceso judicial.

**Hechos**

El 15 de junio de 2000, el Sr. Roberto Torres Izquierdo y su esposa, la Sra. Anabelle Pérez Hernández (en adelante matrimonio Torres-Pérez), presentaron petición de adopción y privación de patria potestad ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (DEX-2000-0139). Solicitaron que se le privara al Sr. David Arroyo (padre biológico), la patria potestad de sus hijos Luis Miguel Pérez Morales (5 años de edad) y Dayna Pérez Morales (3 años y 11 meses). La Sra. Brenda L. Morales López, madre de los menores, había renunciado, a favor del Estado, la custodia y patria potestad en febrero de 1999, cuando el Sr. Arroyo se hallaba privado de su libertad en una institución penal A la fecha en que fue radicada la causa de acción, los menores

habían convivido ininterrumpidamente con el matrimonio Torres-Pérez desde que el Departamento de la Familia le entregara la custodia provisional de éstos el 7 de octubre de 2000.

De otra parte, en la acción civil DEX-2000-0167, radicada el 7 de julio de 2000, ante el mismo foro de Primera Instancia, el Sr. Herminio Rivera González y su esposa la Sra. Esther Azucena López Fontánez, apelantes (en adelante matrimonio Rivera-López), solicitaron la adopción de los mismos menores Luis M. y Dayna L. Pérez Morales, quienes habían estado bajo su custodia desde enero hasta octubre de 1999. Solicitaron, además, la adopción de un tercer hermano a quienes identificaron como Davieth Pérez Morales (7 años y 8 meses), también conocido como José D., de quien nunca tuvieron custodia legal, ni de facto.

Posteriormente, el 2 de agosto de 2000, el matrimonio Torres-Pérez solicitó se le permitiera intervenir en el pleito de adopción iniciado por el matrimonio Rivera-López (DEX-2000-0167) aduciendo tener derecho a ser escuchados debido a que fueron custodios de facto por 9 meses de los menores (Luis M. y Dayna L.). El 9 de agosto de 2000, el hermano foro de Instancia resolvió consolidar ambos procedimientos de adopción (DEX-2000-0139 y DEX-2000-0167).

Luego de varios incidentes procesales, no necesario aquí pormenorizar, la Procuradora de Relaciones de Familia presentó una moción el 17 de enero de 2001 solicitando la desestimación de la petición de adopción del matrimonio Rivera-López (DEX-2000-0167) y argumentó que éstos carecían de legitimación activa para solicitar cualquier privación de patria potestad, devolución de custodia o adopción de los menores Luis M., Dayna L. y Davieth (José D.), por no haber previamente cumplido a cabalidad con los requisitos administrativos que establece el Departamento de la Familia, necesarios para poder presentar una solicitud de adopción respecto a menores bajo el cuidado y custodia legal del Estado. Añadió que el Departamento de la Familia tampoco recomendaba al matrimonio Rivera-López como padres adoptantes, al concluir que ello iba en contra de los mejores intereses de los mencionados menores. Por el contrario, el Departamento de la Familia había recomendado como candidatos idóneos a padres adoptivos, a tenor con el Manual de Normas y Procedimientos para los Servicios a Familias con Niños (en adelante Manual de Normas) al matrimonio Torres-Pérez (DEX-2000-0139).

En cuanto al tercer menor, Davieth (José D.), el Departamento de la Familia argumentó que el matrimonio Rivera-López tampoco tenía derecho a solicitar su adopción, ya que el matrimonio nunca lo tuvo bajo su custodia y el Departamento de la Familia no había tenido oportunidad de cumplir con la requerida supervisión que debe brindar a toda familia que tenga en su hogar a un menor bajo la custodia del Estado y candidato a adopción durante el período probatorio de custodia temporera requerido por ley.

La Procuradora concluyó que el matrimonio Rivera-López no era candidato idóneo para la triple adopción solicitada al no cumplir con la reglamentación vigente del Departamento de la Familia a pesar de ser tíos-abuelos de los mencionados tres menores.

Posteriormente, el matrimonio Torres-Pérez también solicitó la desestimación de la petición de adopción del matrimonio Rivera-López (DEX-2000-0167) acogiendo y haciendo suyos los planteamientos de la Procuradora Especial de Relaciones de Familia a tal respecto. El matrimonio Rivera-López optó por no presentar oposición a las mociones de desestimación antes mencionadas.

Ante dicho cuadro fáctico, el Tribunal de Instancia dictó sentencia parcial el 30 de enero de 2001, archivada en autos y notificada el 9 de febrero de 2001, mediante la cual desestimó con perjuicio la solicitud de adopción del matrimonio Rivera-López (DEX-200-0167). Instancia ordenó a la Secretaria del Tribunal que procediera a registrar y notificar la sentencia parcial y dio cumplimiento al requisito de la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, al concluir que no existía razón para posponer el dictar sentencia final disponiendo de la causa DEX-2000-0167 hasta la resolución final del pleito. De tal forma, también concluyó la consolidación de las causas DEX-2000-0139 y DEX-2000-0167.

Inconformes con lo resuelto, la parte apelante de epígrafe (matrimonio Rivera-López) presentó el recurso de apelación del epígrafe, el 12 de marzo de 2001, e imputó a Instancia la comisión de tres errores, a saber:

*"Erró el Tribunal de Instancia al determinar que los esposos Rivera-López no tienen derecho a solicitar la adopción de sus sobrinos por no estar recomendados como padres adoptantes por el Departamento de la Familia.*

*Erró el Tribunal de Instancia al determinar que los esposos Rivera-López no tienen derecho a controvertir el informe pericial del Departamento de la Familia mediante vista.*

*Erró el Honorable Tribunal al determinar que los peticionarios no tienen derecho a solicitar la adopción de sus sobrinos por el hecho de estar residiendo junto a éstos al momento de solicitar la adopción."*

El matrimonio Torres-Pérez presentó su oposición el 28 de marzo de 2001, poniéndonos así en condición de resolver.

**Exposición y Análisis**

Discutiremos los errores de manera conjunta por estar íntimamente relacionados y haber sido discutidos de tal forma por las partes.

La Ley Núm. 8 de 19 de enero de 1995, 31 L.P.R.A. § 531-538, y la Ley Núm. 9 de 19 de enero de 1995 (*"Ley de Adopción"*), 32 L.P.R.A. § 2699 *et seq.* (Supl. 1999), introdujeron cambios significativos a nuestro esquema legal que rige el trámite y procedimiento de adopción en esta jurisdicción. Ambas leyes atienden y promueven el interés del Estado para imprimir celeridad, eficiencia y lograr mayor calidad en los procedimientos de adopción. Responden a la implantación de una nueva política pública en materia de adopción y protección de los menores e incapacitados, quienes merecen desarrollar sus vidas dentro del calor de un hogar, aprovechándose del amor de unos padres. Es menester del Estado que su intervención sea oportuna e intensa, para asegurar la asignación de los mejores padres disponibles a todos los candidatos para adopción.

El artículo 1 de la referida Ley de Adopción responsabiliza o delega en el Departamento de Servicios Sociales la realización del estudio social pericial correspondiente *"para que los tribunales puedan ejercer su poder de parens patriae en la búsqueda del bienestar y la conveniencia del adoptado".* 32 L.P.R.A. § 2691. Hoy día, dicha responsabilidad recae en el Departamento de la Familia en dos formas. ■

**I**

En los casos en que el menor ha sido colocado de forma independiente en el hogar de sus nuevos padres adoptivos, estos últimos podrán acudir directamente al Tribunal, una vez obtienen la custodia, y allí presentar su petición de adopción. En tales casos, la inherencia del Departamento de la Familia o una entidad privada de trabajo social, sólo actuará en calidad de perito ante el foro judicial para establecer el cumplimiento con los requisitos legales para establecer la necesaria conveniencia respecto al mejor bienestar del menor en ser adoptado como se propone en la petición. 32 L.P.R.A. § 2699(e) (Supl. 1999). ■

**II**

Cuando los adoptantes recurren directamente al Departamento de la Familia para ser incluidos en el listado de candidatos idóneos para adoptar, el trámite requiere cumplir con los reglamentos y requisitos administrativos, antes de adquirir el derecho o estar legitimados para lograr primero la custodia y luego poder iniciar la acción judicial encaminada a la posterior adopción de un menor bajo la custodia legal del Estado. ■

La participación del Departamento de la Familia en el proceso de adopción de un menor bajo su custodia legal, no se limita a servirle de perito al Tribunal. Tal fase judicial o de legalización de una adopción, es sólo el trámite o etapa final del proceso, el cual está precedido de una etapa administrativa a cargo del Departamento de

la Familia que está regulada por el referido Manual de Normas, e incluye un estudio e investigación de los candidatos a padres y madres adoptantes, el cual podrá culminar en la precalificación del adoptante para quedar certificados como personas idóneas para luego iniciar el proceso judicial.

El Manual de Normas define *"hogar adoptivo"* como *"el hogar de una familia de uno o más miembros, que ha sido pre-aprobado por el Departamento de Servicios Sociales (Departamento de la Familia) o por una agencia licenciada por el Departamento, para recibir un menor en adopción"*. ▉

El servicio de adopción que ofrece el Departamento de la Familia comienza cuando los padres biológicos, o el representante legal del menor, en conjunto con el Departamento, deciden que la adopción es la alternativa más apropiada para el mejor bienestar y desarrollo del menor. Luego, el Departamento de la Familia tiene la encomienda o responsabilidad de proveerle ciertos servicios a los padres biológicos, a los menores, a los solicitantes y a los padres adoptivos, tanto durante, como después de terminado el proceso de adopción. Tiene también la indelegable obligación de proteger al menor, y evitar que éste sea colocado en un hogar que no garantice su bienestar. ▉

El Departamento debe seleccionar los padres adoptivos que mejor puedan cumplir con las necesidades del menor. ▉ La familia adoptiva será seleccionada entre aquéllas que han sido pre-estudiadas, pre-aprobadas y debidamente pre-cualificadas para dichos fines. La selección para un menor en particular, se hará dependiendo de las necesidades de éste y de la capacidad de los padres adoptivos para satisfacer dichas necesidades. Las necesidades del menor y capacidades de los adoptantes, se determinarán mediante la evaluación y el estudio social que se haga de ambas partes. ▉

El próximo paso a seguir en el proceso de adopción de un menor bajo la custodia del Estado, es la colocación en un hogar adecuado, seguido por un proceso de supervisión. Durante el proceso de colocación, la agencia mantiene la custodia legal del menor, aunque delega algunas responsabilidades a los candidatos a padres adoptivos elegidos. ▉ Por lo general, se delega también la custodia de facto. Durante este trámite inicial, el Departamento mantiene la responsabilidad de supervisar al menor colocado en el hogar adoptivo y auscultar cómo éste se ajusta a su nuevo hogar. Como regla general este período de supervisión es de al menos un año, aunque podrá ser extendido o reducido si las circunstancias así lo requieren, pero nunca será menor de seis meses. El Departamento mantiene la facultad o potestad de separar al menor del hogar adoptivo, siempre que el mejor bienestar del menor se vea afectado negativamente. ▉

Durante este período de prueba, los padres adoptivos reciben al menor con propósito de adoptarlo y asumen todas las responsabilidades que eso conlleva, con excepción de la patria potestad. ▉ Aceptan, además, recibir visitas de supervisión autorizadas por el Departamento. En caso de que se establezca que el hogar adoptivo no cumple con las exigencias necesarias para satisfacer adecuadamente las necesidades del menor, éste pasará nuevamente a la total custodia del Estado para que pueda ser nuevamente candidato a ser colocado en otro hogar para adopción, según determine el Departamento.

El Departamento retiene la custodia legal del menor hasta tanto se cerciore que la adaptación del menor a su nuevo hogar, ha sido completada satisfactoriamente, para beneficio del menor. Sólo entonces podrá el Departamento recomendar y prestar su consentimiento (contra custodios legales) a la adopción del menor. ▉ Un mes antes de cumplir el período de supervisión señalado, el trabajador social encargado del caso orientará a los candidatos a padres adoptivos para que éstos contraten un abogado e inicien el proceso de legalización de la adopción, radicando una petición ante el tribunal. ▉ En lo referente a este trámite, el Departamento de la Familia aprobó el Reglamento para los Servicios de Adopción y Adopción Subsidiada. ▉

El artículo 5 (sec. 5.2) del Reglamento establece que el Departamento de la Familia proveerá los siguientes servicios, a saber: (a) evaluación de los candidatos a padres adoptivos; (b) orientación y consejería para ayudar en el proceso de evaluación; (c) colocación del menor en espera de adopción; (d) orientación para completar la

adopción mediante trámites legales; (e) supervisión y orientación durante un período mínimo de seis meses y máximo de doce, con posterioridad a colocación; (f) orientación sistemática y referidos a agencias públicas, privadas y privatizadas con posterioridad a la adopción durante un año.

En cuanto al proceso de radicación y estudio de las solicitudes, el reglamento aclara que las personas interesadas deben primero radicar una solicitud a tales fines en la oficina regional del Dpto. de la Familia que le corresponda. Se realizará un estudio social de los candidatos durante un período de sesenta (60) días a partir de la fecha en que fue aceptada la solicitud para el estudio. Una vez finalizado el estudio, habrá dos posibles resultados; a saber, aceptarlos o denegarlos como posibles candidatos a padres adoptivos. ■

En cuanto a las responsabilidades de los candidatos a padres adoptivos, el reglamento establece que éstos deben participar en un adiestramiento de adopción y paternidad responsable; asumir todas las responsabilidades que conlleva la paternidad, salvo la patria potestad; recibir las visitas de supervisión; y facilitar la reubicación del menor a otro hogar que el Departamento determine, cuando éstos no cumplan con los requisitos o responsabilidades. ■

El Departamento, por su parte, viene obligado a ubicar a los menores en hogares previamente aprobados, observando sus propios reglamentos. Ello implica garantizar los derechos de todas las partes, supervisar a los padres adoptivos, orientar a los candidatos en cuanto al proceso de adopción ante el Tribunal de Primera Instancia y consentir la adopción en el proceso judicial cuando ello cumpla con el propósito de ley. ■

### III

En el caso de marras, el Dpto. de la Familia obtuvo la custodia de los menores luego de intervenir con la madre de éstos, la Sra. Brenda I. Morales López, y radicar la acción DMM-99-0012, a tenor con la Ley de Protección de Menores de 1980. Dicha acción culminó con la renuncia de la Sra. Morales López a sus derechos de custodia y patria potestad sobre los menores.

La parte apelante de epígrafe (Rivera-López) acudió entonces al Departamento de la Familia a ofrecer su hogar para el cuido de los menores Luis M. y Dayna L., bajo la supervisión del Dpto. de la Familia, desde enero de 1999. Posteriormente, en octubre de 1999, los apelantes tuvieron que devolver los menores a las Oficinas del Departamento de Naranjito, luego que la trabajadora social Yolanda Navedo rindiera un informe social adverso en cuanto a las condiciones de vida de los menores en dicho hogar, lo cual tuvo el efecto de retirarlos o descalificarlos como candidatos idóneos a la adopción de estos menores que estaban bajo la custodia del Estado.

El matrimonio Rivera-López optó por no atacar o apelar la decisión administrativa del Departamento, ya fuese solicitando la reconsideración del informe o pidiendo uno nuevo, recurriendo ante la Junta Adjudicativa del Dpto. de la Familia, iniciando algún proceso de revisión judicial, o mediante cualquier otro mecanismo a su alcance. De hecho, no fue hasta que presentaron su petición de adopción judicial (DEX-2000-0167), el 7 de julio de 2000 (habiendo pasado más de nueve (9) meses de la notificación del informe social), que atacaron por vez primera la determinación de la agencia que los llevó a devolver la custodia de los menores.

La Ley de la Judicatura de P.R. de 1994, según enmendada, no le otorga jurisdicción, ni competencia al Tribunal de Primera Instancia, para revisar judicialmente las determinaciones administrativas. Para ello se ha establecido el auto de revisión administrativa, a ser expedido discrecionalmente por el Tribunal de Circuito de Apelaciones. ■ Por lo tanto, el recurso judicial de adopción ante Instancia, no es adecuado para atacar una determinación administrativa o solicitar su revisión. Tampoco puede la parte apelante utilizarlo para tratar de revisar un informe social adverso y revocar la decisión administrativa de quitarle los menores en controversia, máxime cuando ello se gestiona a 9 meses plazo.

Los apelantes interesan adoptar unos menores que se encuentran bajo la custodia legal del Departamento de la Familia, ■ por lo que la ley requiere la intervención del Departamento de la Familia durante todo el

proceso.

Por lo tanto, primero que nada, correspondía a los apelantes (matrimonio Rivera-López) pre-calificar para solicitarle al Departamento que colocara a los menores bajo su custodia, luego tenían que lograr la debida cualificación como candidatos a la adopción y, por último, cumplir con el período reglamentario de supervisión. Sólo entonces, podían presentar su petición de adopción ante Instancia. No habiéndose cumplido con lo primero, resulta improcedente la radicación de la causa de adopción DEX-2000-0167.

Como queda ya dicho, de autos surge que el matrimonio Rivera-López originalmente acudió al Departamento de la Familia para obtener la custodia de facto de los menores Luis M. y Dayna L. Y luego de tenerlos bajo su cuido, se vieron obligados a devolverlos al Departamento, tras recibir un informe social adverso de parte de la trabajadora social asignada y respecto al cual no solicitaron revisión. Nueve meses más tarde, cuando ya los esposos Torres-Pérez habían presentado ante el Tribunal petición de adopción (DEX-2000-0139), es que los esposos Rivera-López presentaron su petición de adopción (DEX-2000-0167) sin antes reunir ninguno de los requisitos reglamentarios para ello: (1) no contaban con la custodia de los menores; (2) el Departamento no los había colocado en su hogar; y (3) no habían cumplido exitosamente con el período de supervisión.

En cuanto al tercer menor, Davieth (José D.), los apelantes nunca han solicitado su colocación o custodia de facto al Dpto. de la Familia, así como tampoco le han solicitado ser considerados como candidatos a padres adoptivos del menor. Habida cuenta que los apelantes nunca han tenido al menor objeto de la custodia legal del Estado, bajo su cuido, es forzoso concluir que tampoco cumplen con los requisitos administrativos que deben cumplirse previo a la petición de adopción.

Por último, cabe destacar que en el caso de los menores Luis M. y Dayna L., el Departamento de la Familia ya les encontró un hogar adoptivo cualificado, cuando el matrimonio Torres-Pérez, apelado, obtuvo la custodia de los menores desde octubre de 1999, y luego de un período de supervisión por más de ocho (8) meses presentaron ante Instancia la petición de adopción el 15 de junio de 2000. El matrimonio cuenta con un informe social pericial favorable de parte del Departamento de la Familia y con la aprobación y apoyo de la Procuradora Especial de Relaciones de Familia, adscrita al Tribunal de Primera Instancia.

### Dictamen

Por los fundamentos expuestos, confirmamos la Sentencia Parcial Final dictada por Instancia, ordenando el archivo y desestimación de la solicitud de adopción del matrimonio Rivera-López, en la acción civil DEX-2000-0167.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2001 DTA 161

1. Plan de Reorganización Núm. 1 de 27 de julio de 1995.

2. Véase, además, *Manual de Normas, supra*, nota al calce 2, sección V (C) (1), a la pág. 111.

3. *Id.*, a la pág. 117 (sec. V (c) (2)).

4. *Id.*, a la pág. 1.

**5.** *Id.*, a las págs. 9-10.

**6.** *Id.*, a la pág. 37.

**7.** *Id.*, a las págs. 68-70.

**8.** *Id.*, a la pág. 87 (Consentir en algún proceso quirúrgico o dental recomendado por recomendación médica).

**9.** *Id.*

**10.** *Id.*, a la pág. 88.

**11.** *Id.*, a las págs. 126-127.

**12.** *Id.*, a las págs. 131-132.

**13.** Reglamento Núm. 6109 de 25 de febrero dde 2000 (vigente desde el 5 de marzo de 2000).

**14.** *Id.* (Artículo 6).

**15.** *Id.* (Artículo 7).

**16.** *Id.* (Artículo 8).

**17.** Artículo 4.002 (g).

**18.** Al momento de iniciar el procedimiento, dos de los menores se encontraban bajo cuido, con miras a la adopción, del matrimonio Torres-Pérez, tras haber sido colocados allí por el propio Departamento.